**IN THE COURT OF APPEALS OF IOWA**

No. 22-0807
Filed November 2, 2022

**IN THE INTEREST OF J.D.,**
    **Minor Child,**

**T.D., Father,**
    Petitioner-Appellant,

**J.D., Mother,**
    Respondent-Appellee
_____

Appeal from the Iowa District Court for Scott County, Korie Talkington, District Associate Judge.

A father appeals from an order denying his petition to terminate the parental rights of his child's mother. **REVERSED AND REMANDED.**

Chase A. Cartee of Cartee Law Firm P.C., Davenport, for appellant father.

Jennifer M. Olsen of Olsen Law Firm, Davenport, for appellee mother.

Rebecca C. Sharpe, Bettendorf, attorney and guardian ad litem for minor child.

Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

The father of J.D. appeals the district court's denial of his petition to terminate the parental rights of J.D.'s mother under Iowa Code chapter 600A (2021). He claims there is clear and convincing evidence of statutory abandonment and termination is in the child's best interests. We agree, reverse the district court, and remand for entry of an order consistent with this opinion.

### I. Background Facts and Proceedings.

J.D. was born in October 2017, and a petition for dissolution of his parents' marriage was filed the following month. The court entered a dissolution decree one year later in October 2018. The decree maintained joint legal custody, but it conferred physical care to the father and regular visitation to the mother. The parties agree that they never strictly followed the visitation schedule.

The mother acknowledged using methamphetamine during an abusive relationship before meeting the father. In the summer of 2018, police raided the home she shared with a new boyfriend for illegal drugs, and the Iowa Department of Health and Human Services (DHHS) subsequently became involved. The parents' dissolution decree acknowledged that the DHHS was providing supervision of the mother's visits with J.D. and that visitation could be suspended if either parent was to use any illicit drug in the child's presence or live in a home with the child where methamphetamine or other drugs were present. The report of the child's guardian ad litem (GAL) indicated that the DHHS closed its case based upon the stipulations in the divorce decree ensuring J.D.'s safety.

The mother paid up her outstanding child-support obligation when her house was sold in February 2020. Since then, she has provided no financial

support for J.D. The mother explained that she thought her child-support obligation was being offset by the amount her ex-husband owed on a marital loan. However, since being notified that she needed to regularly pay child support, she did not do so.

The mother testified that the father did not let her visit J.D. from November 2019 until March 2020. She recounted visiting the child weekly at her father's home from April until August and then approximately once per month at various other locations until January 2021. However, she claimed many visits fell through because the father made excuses to cancel the visits. The district court found the father and his new wife did not obstruct the mother's ability to see her son, except when necessary to protect J.D. from the mother's abusive boyfriend. The father also took steps to encourage the mother's relationship with J.D., such as picking her up for visits sometimes when they occurred and paying for meals and other activities. In 2021, she saw the child in January and twice in October. The court suspended her visitation in June pursuant to the divorce decree's stipulation on drug use, but it set aside this order in August upon learning there was a juvenile case opened.

The father filed the petition for termination of parental rights in April 2021, shortly after the mother was arrested for possession of methamphetamine and admitted being a daily user. She obtained a substance-abuse evaluation in June, received treatment from various agencies between July and December, and began extended outpatient treatment in December. She provided a positive drug test in June 2021 but returned clean test results in November and again in January 2022. At trial, she admitted her last use was in October 2021. The mother also

acknowledged being in a domestically-violent relationship that impacted her parenting performance. She was able to get away when this partner was arrested with her in April. Although he is currently in prison, she admits staying in contact with him and says she is doing so for his children. The pair do not share any biological children.

A termination hearing began in November 2021. Because the parties were not able to complete the hearing in the time allotted, the court resumed the proceedings in December and concluded on a third day in February 2022. The court ultimately entered an order denying the father's petition in April. The father filed a timely appeal.

### II. Review.

We review private termination proceedings de novo. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *Id.* (citation omitted).

### III. Abandonment.

Iowa Code section 600A.8(3) allows the court to terminate parental rights if a parent has abandoned a child. "To abandon a minor child" means to "reject[] the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(20). The statute considers a parent to have abandoned a child six months of age or older "unless the parent maintains substantial and continuous or repeated contact with the child." *Id.* § 600A.8(3)(b). To prevent a finding of

abandonment, a parent must provide "contribution toward support of the child of a reasonable amount, according to the parent's means." *Id.* § 600A.8(3)(b). The parent must also show "substantial and continuous or repeated contact" by at least one of the following:

> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* § 600A.8(3)(b)(1)–(3). While the district court indicated there is also an intent element referring to the parent's accompanying state of mind, the case law on this point relies on an earlier version of chapter 600A. *Compare id.* § 600A.2(20) (2021)*, with id.* § 600A.17 (1997). Today, a parent's subjective intent is immaterial and does not preclude a finding of abandonment. *See id.* § 600A.8(3)(c) (2021).

The juvenile court found the evidence did not support finding that the mother abandoned the child because she saw the child as recently as October 2021 and saw him more frequently prior to April 2021. However, we find the mother's sporadic visits, which the record reflects lasted until January 2021, were not sufficient to meet "the duties imposed by the parent-child relationship." *Id.* § 600A.2(20); *see also In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993) (noting that "total desertion is not required for a showing of abandonment"). Even accounting for the court-ordered suspension of visitation in 2021, the mother saw J.D. in only two of seven available months. Moreover, her ability to visit her son was not unduly

obstructed, as we do not find occasion to disturb the district court's implicit credibility finding in favor of the father and his new wife on this point. Because the mother's contact with her son was marginal at best, J.D. recognized her merely as someone he knew and not as his mother. Combined with her failure to financially support J.D., clear and convincing evidence shows the mother abandoned the child as required to terminate her parental rights under section 600A.8(3)(b).

### IV. Best Interests.

We next turn to the question of the child's best interests. *See* Iowa Code § 600A.1(1) ("The best interest of the child subject to the proceedings of this chapter shall be the paramount consideration in interpreting this chapter."). "The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent." *Id.* § 600A.1(2). When determining whether a parent has affirmatively assumed this duty, the court must consider a parent's "fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.*

The court ruled that termination would not be in J.D.'s best interests because "[h]e is young enough that if [the mother] can maintain her sobriety, he may be able to build a relationship with her." We commend the progress that she has begun making over the months it took to complete the termination hearing, but we find these actions are insufficient and too late. She used methamphetamine up until the month before the termination hearing began. Over the course of her life, she has attempted treatment seven times. The mother has not demonstrated

an improvement in her ability to protect the child from domestic violence and criminal activity. She declined to let the GAL visit her home and did not provide any photographs of her living space or items she has for the child.

The record shows that the mother was not fully embodying her role as a parent even before her arrest prompted the father to file a termination petition. In the years between the divorce and her arrest, the mother did not exercise full visitation with the child under the decree or file suit to enforce the terms of the decree. The child does not ask about her or recognize her as his mother. There is little, if any, relationship between them. The father's wife assumed the role of mother to the child. Terminating the mother's parental rights will allow the stepmother to adopt the child. In light of her limited contact and lack of support for the child, we find the mother has failed to affirmatively assume the duties encompassed by the role of being a parent. She has not demonstrated a genuine effort to maintain communication or a place of importance in J.D.'s life. Therefore, clear and convincing evidence shows termination is in the child's best interests.

### V.  Disposition.

Both the statutory grounds for abandonment and the child's best interests support terminating the mother's parental rights. Accordingly, we reverse the district court's denial of the termination petition and remand for entry of an order consistent with this opinion.

**REVERSED AND REMANDED.**